HUEMILLER *v.* YELLOW TRUCK & COACH MANFG. CO.

WORKMEN'S COMPENSATION—FURTHER COMPENSATION—FINDING OF
DEPARTMENT—TRAUMATIC NEUROSIS.

Plaintiff employee of automobile manufacturer who was accidentally burned about the face, neck and right arm, received compensation for a time and resumed employment until laid off because of lack of work *held,* not entitled to further compensation for traumatic neurosis on petition filed a month later where department of labor and industry found the nervous condition was not so disabling as to impair his wage-earning capacity, upon competent testimony, notwithstanding the record contains testimony upon which a contrary finding could have been made.

Appeal from Department of Labor and Industry. Submitted April 4, 1940. (Docket No. 45, Calendar No. 40,815.)   Decided June 3, 1940.

Walter A. Huemiller presented his claim against Yellow Truck & Coach Manufacturing Company (General Motors Corporation), employer, for compensation for injuries sustained while in defendant's employ.   On petition for further compensation. Plaintiff reviews denial of award by appeal in the nature of certiorari.   Affirmed.

*Johnson & Johnson, Odin H. Johnson,* and *Hector J. Johnson,* for plaintiff.

*Carlos J. Jolly (J. G. Stevenson,* of counsel), for defendant.

CHANDLER, J.   Plaintiff sustained an accidental injury on May 12, 1937, consisting of burns about the face, neck and right arm, and was paid compensa-

tion therefor to June 26, 1937, the payments being then stopped under and by virtue of the terms of an approved settlement receipt.

He returned to work thereafter and continued to be employed by defendant until April 28, 1938, at which time he was discharged due to the fact that sufficient work was not available. During the period of employment subsequent to the accident, he worked at a turret lathe, which he operated at the time of the injury; as an inspector; operated a milling machine and a drill press; and performed clerical work and worked in the salvage department.

On May 18, 1938, he filed a petition for further compensation which was denied by the department of labor and industry. From the award so entered, he has taken this appeal in the nature of certiorari.

It is plaintiff's present position that he is suffering from traumatic neurosis which is attributable to the accident, the neurosis being manifest by a numbness occurring in the fingers of the left hand when in contact with a cold substance. Assuming that these complaints are well grounded, the department found that:

"Plaintiff's nervous condition was at least accentuated or aggravated by his accidental injury. We do not believe, however, that the record indicates the extent of his disability, if any, resulting from such nervous condition with sufficient clarity to justify an award for compensation. The present petition for further compensation was filed less than a month after plaintiff was laid off from regular employment. His stopping work was due to a slack in production and not to his nervous condition. For two or three months beginning with the latter part of October of 1937, he worked satisfactorily at his old job on a turret lathe. We are unable to conclude from the present record that the plaintiff could not have done

such work at the time of the hearing had it been available for him to do. If the plaintiff should fail upon an actual attempt at work, or if adequate proof should be submitted in some future proceeding that his nervous condition rendered him incapable of earning wages in modern industry, he would be entitled to compensation. The present record, however, is not adequate for that purpose.''

It is apparent that the department was of the opinion that although plaintiff was suffering from a nervous disturbance which was attributable to the accident, the condition did not result in a disabling condition which impaired his wage-earning capacity.

Although the record contains testimony upon which the department could have based a contrary finding, Dr. Darling, defendant's witness, testified:

''*Q.* Was he able to work at that time, the 29th of April, 1938, which is the date you are speaking of about this man?

''*A.* I felt that he was. In fact, I advised Walter to keep occupied.

''*Q.* You thought it would be best for him to work?

''*A.* Yes.

''*Q.* When did you examine the plaintiff again, doctor?

''*A.* May 27, 1938.

''*Q.* What occasioned that examination?

''*A.* He was sent in for examination for this hearing.

''*Q.* To find out what his condition was at that time?

''*A.* Yes.

''*Q.* Of what did the examination consist?

''*A.* It consisted of a history, complete physical examination, blood examination, urine examination. That is all.

"*Q.*  What did the examination elicit?  What did you find as a result of this examination?

"*A.*  I didn't find anything of importance in the physical examination.

"*Q.*  You found the man to be normal physically?

"*A.*  Yes, there are no gross changes in his physical makeup.

"*Q.*  At that time, referring to May 27, 1938, were you still of the opinion that Mr. Huemiller was able to work?

"*A.*  Yes, I felt that it was important for him to work.

"*Q.*  Did you advise him that he should work?

"*A.*  Yes.

"*Q.*  You are still of the same opinion today—that there is no reason today why this man can't return to his job at the plant just as soon as there is a job open for him?

"*A.*  Yes.

"*Q.*  I understand that the difficulty at the present time, what we have there, and from what Mr. Pudick said, it has been entirely on account of seniority, and that is the reason why the man has not been able to return to a job at the plant?

"*A.*  That is the way I understand.

"*Q.*  That is the way you understand?

"*A.*  Yes."

The foregoing competent testimony supports the finding of the department, and the award is, therefore, affirmed, with costs to defendant.

BUSHNELL, C. J., and SHARPE, POTTER, NORTH, MCALLISTER, and WIEST, JJ., concurred.  BUTZEL, J., did not sit.